```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


EMERGENCY ACCESSORIES &          :
INSTALLATION, INC.,              :
                                 :    HONORABLE JOSEPH E. IRENAS
        Plaintiff,               :
                                 :    CIVIL ACTION NO. 09-2652
     v.                          :           (JEI/AMD)
                                 :
WHELEN ENGINEERING CO., INC.,    :          OPINION
                                 :
        Defendant.               :
```

**APPEARANCES:**

PEPPER HAMILTON, LLP
By: Jeffrey A. Carr, Esq.
    Stephanie Jonaitis, Esq.
301 Carnegie Center
Princeton, New Jersey 08543
    Counsel for Plaintiff

SHIPMAN, GOODWIN, LLP
By: Charles Howard, Esq.
1 Constitution Plaza
Hartford, Connecticut 06103
    and
WONG FLEMMING, PC
By: Linda Wong, Esq.
821 Alexander Road, Suite 150
Princeton, New Jersey 08543
    Counsel for Defendant


**IRENAS**, Senior District Judge:

   This lawsuit arises from a May 7, 2009 letter sent to Plaintiff Emergency Accessories & Installation, Inc. ("EAI") by Defendant Whelen Engineering Company, Inc.'s ("Whelen") Senior Vice President of Sales and Marketing, informing EAI that Whelan was terminating the "Master Distributor Agreement" between Whelan and

EAI.  (See Slipp Ex. B[1])

EAI's request for injunctive relief seems to be primarily based on Whelen's asserted violation of the New Jersey Franchise Practices Act, although EAI's brief in support of their present application asserts that they will likely prevail on their other three claims, which are breach of contract, breach of the duty of good faith and fair dealing, and tortious interference with prospective economic advantage.  EAI seeks a temporary restraining order essentially restraining Whelen from terminating the Master Distributor Agreement and compelling Whelen to honor its obligations under the Agreement.

## I.

EAI sells and installs emergency lighting and other emergency response vehicle equipment.  (Verif. Compl. ¶ 12)  It maintains a "sales/service desk" in Cherry Hill, New Jersey, where it sells Whelen products and "trains technicians regarding the capabilities and use of Whelen products."  (Id. at ¶ 31)  "At any given time, EAI's inventory stock levels are approximately $600,000 to $1,000,000 of Whelen emergency lighting products, which as of May 18, represents approximately ninety-five percent of its emergency lighting products and fifty-three percent of EAI's entire inventory."  (Id. at ¶ 27) "EAI receives its business primarily through the public bidding process" for government or quasi-governmental contracts.  (Id. at ¶ 14-15)  EAI also has a close relationship with Winner Ford of Cherry

---

[1] The copy of the agreement submitted by EAI has no signatures.

2

Hill,[2] whereby EAI provides quotes to Winner so that Winner may submit bids for government contracts related to emergency response vehicles and their equipment.  (Id. at ¶ 16)

The parties' relationship dates back to "at least 2001," and is governed by The Master Distributor Agreement (hereafter "Agreement"). (Verif. Comp. ¶¶ 26, 36; Slipp[3] Ex. A)  The Agreement's stated purpose is "to establish specific Policies, Discounts and Benefits for the purchase of Whelen products by the Whelen Master Distributor [i.e., EAI], and to define the relationship between Whelen and such Whelen Master Distributor in the promotion, sales, and distribution of these products."  (Slipp Ex. A)

Specifically, the Agreement requires EAI to, among other things, "maximize the sale of Whelen Products;" "use its best efforts to promote, introduce, demonstrate, and solicit orders for, and sell products manufactured by Whelen;" and "protect and promote the good name of Whelen and avoid any activity that might be detrimental to Whelen's interest, reputation, or good will."  (Slipp Ex. B at p. 2) If one or more of these "requirements" are not met, Whelen reserves the right to "terminate [the agreement] upon 30 days' written notice."  (Id.)

With respect to termination, the Agreement provides, in relevant part,

> (a)  Either party may terminate this Agreement without cause by giving thirty (30) days' prior

---

[2]  EAI apparently shares the same Cherry Hill address (250 Haddonfield-Berlin Road) with Winner Ford.

[3]  Donald J. Slipp is EAI's Vice President.

          written notice of termination to the other party.

    (b)    For cause, Whelen may terminate this Agreement effectively upon the mailing of written notice for any of the following reasons:

        (1)    [EAI's] breach of any provisions, terms or conditions of this Agreement.

        (2)    [EAI's] breach of any provisions, terms or conditions of the Whelen 'General Policies.'[4]

(Slipp Ex. B ay p. 14)

The Agreement also "authorizes [EAI] to use those of Whelen's trademarks and trade names associated with the Whelen products." (Slipp Ex. A at p. 11)

The Agreement contains choice of law and choice of forum provisions: the Agreement shall be "interpreted and governed in accordance with the laws" of Connecticut; and "each party to this agreement . . . hereby irrevocably agrees that any suit, action, or other legal proceeding arising out of this agreement . . . shall exclusively be brought in any Connecticut or United States federal court located in the State of Connecticut."  (Slipp Ex. A at p. 16)

With regard to the events and circumstances immediately giving rise to the termination letter, at this time, the Court only knows what is contained in the termination letter.  Whelen states that it is terminating the Master Distributor Agreement because of a

---

[4] EAI has not submitted a copy of the Whelen General Policies.

"frivolous" and "unworthy" bid protest by EAI, which Whelen asserts will cost Whelen "a significant amount of sales from many municipal and state agencies throughout [New Jersey]" because "[t]o unrealistically delay contracts, bids, or orders from being implemented usually drives sales to other manufacturers and suppliers," and "ultimately injures [Whelen's] reputation and good name."  (Slipp Ex. B)  While the letter does not reference any particular Master Distributor Agreement provision that EAI allegedly breached, as just noted, injury to Whelen's reputation is a ground for termination under the Agreement.  (See Slipp Ex. A at p. 2)

**II.**

A party seeking temporary or preliminary injunctive relief must demonstrate that: (1) there is a reasonable probability of success on the merits; (2) the movant will be irreparably injured if relief is not granted; (3) the relative harm to the movant in the absence of relief is greater than the harm that will be sustained by the non-movant if relief is granted; and (4) the public interest favors the injunction. *Central Jersey Freightliner, Inc., v. Freightliner Corp.*, 987 F. Supp. 289, 295 (D.N.J. 1997).

**A.**

"To establish a likelihood of success on the merits, the moving party need not demonstrate that its entitlement to a final decision after trial is free from doubt.  Rather, the moving party must demonstrate a 'reasonable probability of eventual success in the

5

litigation.'" *Id.*

1.

The threshold issue is whether EAI will likely prove that the Franchise Practices Act[5] is applicable to the Master Distributor Agreement. The Court holds EAI has established its likelihood of success on this issue.

A franchise exists under the Franchise Practices Act if:

> (1) there is a 'community of interest' between the franchisor and the franchisee; (2) the franchisor granted a 'license' to the franchisee; and (3) the parties contemplated that the franchisee would maintain a 'place of business' in New Jersey.

*Cooper Distributing Co., Inc., v. Amana Refrigeration, Inc.,* 63 F.3d 262, 268-69 (3d Cir. 1995)(quoting N.J.S.A. §§ 56:10-3a, 10-4). The Court addresses these factors in reverse order.

The Franchise Practices Act defines "place of business" as:

> a fixed geographical location at which the franchisee displays for sale and sells the franchisor's goods or offers for sale and sells the franchisor's services. Place of business shall not mean an office, a warehouse, a place of storage, a residence or a vehicle.

---

[5] As to the Franchise Practices Act claim, New Jersey law applies even though the Master Distributor Agreement states that it shall be governed by Connecticut law. *See Instructional Sys. Inc. v. Computer Curriculum Corp.,* 130 N.J. 324 (1992) (hereafter "*ISI*").

Similarly, the Court holds the forum selection clause unenforceable. "Forum-selection clauses in franchise agreements are presumptively invalid, and should not be enforced unless the franchisor can satisfy the burden of proving that such clause was not imposed on the franchisee unfairly on the basis of its superior bargaining position." *Allen v. World Inspection Network Int'l, Inc.,* 389 N.J. Super. 115, 120 (App. Div.2006). The Court finds nothing in the present record that would overcome the presumption of invalidity.

6

N.J.S.A. § 56:10-3f.  The Verified Complaint asserts that "[a]t its Cherry Hill, New Jersey location, EAI established and maintains a sales/service desk at which EAI (1) displays Whelen products, banners and logos, (2) offers for sale and sells Whelen products, and (3) demonstrates and trains technicians regarding the capabilities and use of the Whelen products."  Thus, EAI will likely prove by a preponderance of the evidence that it maintains a place of business in New Jersey.

The FPA does not contain a definition of "license."  Moreover, while the Master Distributor Agreement does not use the term "license," it is clear that Whelen has granted EAI a license to use its trademarks and trade names.  The Agreement provides,

> Whelen authorizes [EAI] to use those of Whelen's trademarks and trade names associated with the Whelen products to be sold hereunder solely for the purpose of promoting such Whelen products in accordance with this Agreement.  Each intended use of the trademarks and trade names shall be approved in advance by Whelen. . . . Whelen trademarks and trade names are the property of Whelen Engineering Company, Inc. and may be used only as set forth in the Guidelines for Use of Whelen Trademarks available at www.whelen.com."

(Slipp Ex. A at p. 11, 16)  The Guidelines for Use of Whelen Trademarks, in turn, states that the use of Whelen's mark may not be used "except pursuant to an express written trademark license from Whelen, such as a Distributor Agreement."

Whelen argues that it has not granted EAI a license as contemplated by the FPA, rather, it has only granted EAI limited permission to sell a name brand product.  Relying on *Liberty Sales Associates, Inc. v. Dow Corning Corporation,* where this Court held

7

that no license existed, Whelen essentially asserts that EAI's use of the Whelen mark was only intended to promote Whelen's products, as opposed to the Whelen name, or brand or goodwill. 816 F.Supp. 1004, 1011 (D.N.J. 1993) (Irenas, D.J.). However, Whelen authorized EAI to use its mark "solely for the purpose of promoting such Whelen products *in accordance with this Agreement*;" and the under the Agreement, EAI must "maximize the sale of Whelen Products;" "use its best efforts to promote, introduce, demonstrate, and solicit orders for, and sell products manufactured by Whelen;" and "protect and promote the good name of Whelen." (Slipp Ex. A)  Thus, the Agreement here is more akin to the agreement in *ISI*, which this Court distinguished from the *Liberty* agreement. *See Liberty,* 816 F. Supp. at 1011.

The Court concludes that the license granted to EAI is more than just a limited license given to any retailer of a product. Accordingly, EAI will likely prove that Whelen granted it a license to use Whelen's trademarks and trade name, as contemplated by the FPA.

Third, the New Jersey Supreme Court has explained that "[c]ommunity of interest exists when the terms of the agreement between the parties or the nature of the franchise business requires the licensee, in the interest of the licensed business's success, to make a substantial investment in goods or skill that will be of minimal utility outside the franchise." *ISI*, 130 N.J. at 359 (citation omitted).

The Third Circuit has also held that in order to find a

8

"community of interest," the party seeking the protection of the Franchise Practices Act must demonstrate: "(1) the distributor's investments must have been 'substantially franchise-specific', . . . and (2) the distributor must have been required to make these investments by the parties' agreement or the nature of the business." *Cooper Distributing,* 63 F.3d at 269 (citations omitted).

EAI's community of interest argument may be boiled down to a single sentence in its brief: "Without Whelen products, EAI will have no business." (EAI's Br. at 16)  Thus, EAI reasons, "the incentive structure of the [parties'] relationship [under the Master Distributor Agreement] is in full alignment." (Id. at 17)

With respect to EAI's "substantial investment in goods or skill that will be of minimal utility outside the franchise," the Verified Complaint asserts that since 2001, EAI has invested in common marketing and promotional campaigns with Whelen pursuant to the terms of the Master Distributor Agreement. (Verfi. Compl. ¶¶ 28, 30-33, 35) Further, the Complaint asserts that these efforts resulted in "converting a significant number of customers to Whelen products from the products of its competitors." (Id. at ¶ 29)  Specifically, EAI puts forth evidence that it has successfully persuaded the City of Camden, the City of Newark, and Cherry Hill Township to purchase exclusively Whelen products. (Slipp Decl. ¶ 7)  EAI asserts, and the Court agrees, that these efforts will only inure to the benefit of Whelen if the Master Distributor Agreement is terminated.

Moreover, the Master Distributor Agreement clearly requires such investments. The Agreement requires EAI to:

9

>         (a)  maintain both a full time inside sales force of adequate size and an outside sales force . . . in each case to maximize the sale of Whelen products
>
>         (b)  use its best efforts to promote, induce, demonstrate and solicit orders for, and sell products manufactured by Whelen
>
>  . . . [and] . . .
>
>         (f)  specifically offer meaningful promotions on Whelen products . . . at least twice a year . . .

(Slipp Ex. A at p. 2-3)

Thus, I conclude that EAI will likely prove that it has a community of interest with Whelen.

In addition to the three factors just discussed, EAI must also establish that it makes sales of Whelen products in excess of $35,000 per year and that the sale of those products constitute at least 20% of EAI's overall business.  *See* N.J.S.A. 56:10-4.  The Slipp Declaration states that in the preceding twelve months, EAI's sales of Whelen products "aggregated approximately $1,931,000; and those sales represent approximately 37% of EAI's overall business."  (Slipp Decl. ¶ 8)  Accordingly, EAI is also likely to satisfy the minimum sales threshold.

In summary, the Court holds that EAI will likely prove that the Master Distributor Agreement establishes a franchise relationship between EAI and Whelen; and the New Jersey Franchise Practices Act applies.

2.

The next issue is whether EAI is likely to prove that Whelen

violated the Franchise Practices Act by terminating the Master Distributor Agreement.  The Court holds that EAI has established its likelihood of success on this issue.

> The Act provides,
>
> It shall be a violation of this act for any franchisor . . . to terminate . . . a franchise without having first given written notice setting forth all the reasons for such termination . . . to the franchisee at least 60 days in advance of such termination. . . . It shall be a violation of this act for a franchisor to terminate . . . a franchise without good cause.  For purposes of this act, good cause shall be limited to failure of the franchisee to substantially comply with those requirements imposed upon him by the franchise.

N.J.S.A. 56:10-5.

First, Whelen's letter of May 7, 2009, states that the Master Distributor Agreement is terminated effective May 11, 2009.  (Slipp Ex. B)  Thus, EAI will likely prove that Whelen failed to comply with the FPA by terminating the Agreement upon less than 60 days notice.

Second, EAI asserts that it can also prove that Whelen did not have good cause to terminate the Agreement.  According to EAI, the termination letter provides no reason for the termination, much less a reason constituting good cause.  However, the letter may be reasonably interpreted to state that Whelen terminated EAI's agreement because EAI protested a bid submitted by another Whelen distributor, a competitor of EAI.  According to the termination letter, "frivolously" and baselessly contesting a bid by another Whelen distributor causes "unrealistic delay" in the implementation of contracts, bids or orders, "usually driv[ing] sales to other manufacturers and suppliers," which "ultimately injures [Whelen's] reputation and good name."  (Slipp Ex. B)

11

Thus, the issue becomes whether EAI's bid protest was a failure to substantially comply with the Master Distributor Agreement. EAI, of course, notes that the Master Distributor Agreement does not prohibit EAI from pursuing bid protests. However, the Agreement does obligate EAI to "protect and promote the good name of Whelen and avoid any activity that would be detrimental to Whelen's interest, reputation, or good will." (Slipp Ex. A at p. 2) Presumably Whelen will argue that EAI breached this duty under the Agreement and therefore failed to substantially comply with the Agreement.

However, the Agreement does not state that EAI must refrain from any activity that *might possibly* injure Whelen's reputation or good will. According to Whelen's own explanation, its reputation and good will are injured by a bid protest <u>if</u> sales are diverted to other manufacturers. However, Whelen's letter does not assert that any sales actually were diverted, therefore there can be no injury to its reputation and good will. Whelen's termination letter simply does not assert a breach of the Agreement, and therefore does not terminate the franchise for good cause. Thus, EAI is likely to prove that in addition to violating the 60 day notice requirement, Whelen also violated the FPA by terminating the Master Distributor Agreement without good cause.[6]

---

[6] The fact that the Master Distributor Agreement provides that the Agreement may be terminated at will does not alter the Court's conclusion. *See General Motors Corp. v. New A.C. Chevrolet, Inc.,* 263 F.3d 296, 319 (3d Cir. 2001) ("§ 56:10-5 modifies the termination provisions of all franchise agreements governed by the laws of New Jersey: Even if the terms of a private franchise agreement permit termination at will, § 56:10-5's good cause requirement will supersede that arrangement and impose a good cause requirement on the franchisor's decision.").

12

**B.**

With respect to irreparable harm, EAI must "'make a clear showing of immediate irreparable injury, or a presently existing actual threat'" of injury. *Atlantic City Coin & Slot*, 14 F.Supp.2d at 666 (quoting *Acierno v. New Castle County*, 40 F.3d 645, 655 (3d Cir. 1994)).

EAI asserts that if Whelen is allowed to terminate the Master Distributor Agreement, it would be, in effect, the death knell for EAI. EAI explains,

> [w]ithout the ability to purchase Whelen products directly from Whelen at the reduced prices set forth under the terms of the [Master] Distributor Agreement, EAI will not be able to meet its contractual obligations without repeatedly selling at a substantial loss which will soon lead to the end of EAI. Forcing EAI to watch the destruction of its business and then wait for the resolution of a civil action irreparably harms EAI.

(EAI Br. at p. 24) Thus, EAI asserts, its injury is far more extensive than just a loss of revenue, and therefore money damages would not achieve full compensation for the wrongful termination.

With respect to the injury caused by termination of a franchise relationship between Ford and its franchisee Semmes car dealership, Judge Friendly once observed,

> Ford's contention that Semmes failed to show irreparable injury from termination is wholly unpersuasive. Of course, Semmes' past profits would afford a basis for calculating damages for wrongful termination, and no one doubts Ford's ability to respond. But the right to continue a business in which William Semmes had engaged for twenty years and into which his son had recently entered is not measurable entirely in monetary terms; the Semmes want to sell automobiles, not to live on the income from a damage award. . . . Moreover, they want to continue living. As Judge Goodrich said, a 'judgment for damages acquired years after his franchise has

>been taken away and his business obliterated is small consolation to one who, as here, has had a Ford franchise' for many years.

*Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d Cir. 1970). As Judge Brotman observed in *Atlantic City Coin & Slot*, several courts within the Third Circuit have adopted Judge Friendly's reasoning and applied it in Franchise Practices Act cases. 14 F.Supp.2d at 667-68 (citing and discussing cases concluding that "termination of a long-standing business relationship can result in irreparable harm."); *see also Saturn of Denville N.J. v. GMC,* No. 08-5734, 2009 U.S. Dist. LEXIS 45155 at * 18 (D.N.J. May 29, 2009) ("Allowing Plaintiffs' business to continue to erode would amount to irreparable harm."); *see generally* 1-14 Knapp, Commercial Damages: Remedies in Business Litig. ¶ 14.04 ("Irreparable harm may also include an entire array of situations that could be characterized as loss of enterprise cases. Such losses are irreparable both because they are unique and because damages may be ultimately unquantifiable. The loss of a distributorship, for example, cannot be compensated by money damages when it consists of an ongoing business representing years of effort.").

Thus, the Court concludes that EAI has met its burden of establishing that it will suffer irreparable injury absent an injunction preventing termination of the Master Distributor Agreement.

### c.

The Court also holds that the balance of the harms favors EAI.

14

As just discussed, EAI's harm is grave: the complete discontinuation of its business not only harms it, but also harms its 21 employees that will be left without a job in these difficult financial times. (See Slipp Decl. ¶ 11) ("EAI has twenty-one employees whose jobs are in jeopardy if EA is forced to wind down its operations.")  Any possible harm to Whelen simply does not compare.  Indeed, it is difficult to see what harm would result in requiring Whelen to continue to honor an Agreement which has existed between the parties in various forms, for the past eight years.

**D.**

Lastly, the Court also holds that the public interest favors issuing a temporary restraining order.  Doing so furthers the public policies embodied by the Franchise Practices Act.  It also preserves a business that provides a valuable product to the law enforcement community.  Moreover, to the extent that issuing a restraining order preserves the jobs of 21 EAI employees, it furthers the public interest in avoiding added burdens on New Jersey's unemployment benefits fund.

**III.**

Having concluded that EAI has met its burden on all elements of its application for a temporary restraining order based on Whelen's alleged violation of the New Jersey Franchise Practices Act, the Court will issue a temporary restraining order against Whelen and establish a hearing date and briefing schedule as to EAI's Motion for Preliminary Injunction.


Date: June 3, 2009              s/ Joseph E. Irenas
                            JOSEPH E. IRENAS, S.U.S.D.J.